UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re | ) ) ) | Chapter 7 |
| DENISE M. FADILI | ) ) | Case No. 04-10594-WCH |
| Debtor. | ) ) ) |  |
| STEWART F. GROSSMAN, CHAPTER 7 TRUSTEE, Plaintiff, | ) ) ) ) ) | Adversary Proceeding No. |
| v. | ) ) |  |
| DAVID B. MADOFF AS CREDITOR TRUSTEE UNDER CONFIRMED PLAN OF REORGANIZATION PROPOSED BY MAHONEY HAWKES LLP; ESSAM AL-TAMIMI AS TRUSTEE OF ZINC SPUR REALTY TRUST; THE STONEHAM CO-OPERATIVE BANK; COMMONWEALTH OF MASSACHUSETTS/ MASSACHUSETTS STATE LOTTERY COMMISSION; BAY STATE FRAMING, INC.; BEALS AND THOMAS, INC.; JOHN P. RAUSEO; DENISE M. FADILI; EMMES CAPITAL LLC; RILEY & DEVER, P.C. Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  |

**COMPLAINT TO AVOID LIENS AND TO DETERMINE STATUS AND VALIDITY OF CLAIMS AND EXTENT OF HOMESTEAD EXEMPTION**

PRELIMINARY STATEMENT

This is an action brought by Stewart F. Grossman, the Chapter 7 Trustee (the

"Trustee") in the above-captioned Chapter 7 case, seeking (i) a determination pursuant to 11

U.S.C. (the "Bankruptcy Code") §506(a) of the validity and amount of defendants' secured

claims against $300,000 in surplus proceeds paid to the Trustee for the benefit of the estate as

a result of the foreclosure sale of property located at 120 Main Street, Wakefield,

L://15242/003/Pld/01

Massachusetts (the "Wakefield Property") owned by Denise M. Fadili (the "Debtor") on the date of her bankruptcy petition (the "Surplus Proceeds"); (ii) the avoidance, pursuant to Bankruptcy Code §544(a), of transfers of interests in the Wakefield Property or obligations incurred by the Debtor that are voidable under applicable law, and the determination, pursuant to Fed. Bank. R. 7001(2), of the validity or the extent of defendants' interests in the Surplus Proceeds; (iii) the avoidance, pursuant to Bankruptcy Code §549, of a post-petition transfer of a mortgage interest in the Wakefield Property and the preservation of such interest in the Surplus Proceeds for the benefit of the estate pursuant to Bankruptcy Code §551; and (iv) a determination as to the extent of the Debtor's homestead exemption in the Surplus Proceeds.

## PARTIES

1. Plaintiff, Stewart F. Grossman, is the duly appointed, qualified and acting Chapter 7 Trustee of the estate of the above-named Debtor.

2. Defendant, David Madoff, is the Creditor Trustee pursuant to an Order dated January 11, 2006 confirming the Third Amended Joint Plan of Reorganization proposed by Mahoney Hawkes, LLP, the successor of Mahoney Hawkes & Goldings ("Mahoney Hawkes"), and the official Committee of Unsecured Creditors in the Mahoney Hawkes Chapter 11 case (Case No. 01-12880-Welt). Mr. Madoff has a principal place of business located in care of David Madoff, Esq., Madoff & Khoury, LLP, 124 Washington Street, Suite 202, Foxboro, Massachusetts.

3. Defendant, Essam Al-Tamimi is the Trustee of Zinc Spur Realty Trust ("Zinc Spur"), a realty trust with a mailing address of P.O. Box 6343, Ketchum, Idaho.

4. Defendant, The Stoneham Co-Operative Bank ("SCB"), is a bank organized under the laws of Massachusetts with a principal place of business located at 80 Montvale Avenue, in Stoneham, Massachusetts.

5. Defendant, the Commonwealth of Massachusetts/Massachusetts State Lottery Commission (the "Lottery Commission"), is a Commission under the Department of the Treasurer and Receiver General of the Commonwealth of Massachusetts.

6. Defendant, Bay State Framing, Inc. ("Bay State Framing"), is a corporation organized under the laws of Massachusetts with a principal place of business located at 27 Fuller Rd., Middleton, Massachusetts, 01949.

7. Defendant, Beals and Thomas, Inc. ("Beals & Thomas"), is a corporation organized under the laws of Massachusetts with a principal place of business located at Reservoir Corporate Center, 144 Turnpike Rd., Route 9, Southboro, Massachusetts, 01772.

8. Defendant, John P. Rauseo ("Rauseo"), is a practicing attorney whose principal place of business is located at 40 Salem Street, Lynnfield, Massachusetts.

9. Defendant, Denise M. Fadili, is the Debtor in the above-captioned matter.

10. Emmes Capital, LLC ("Emmes Capital") is limited liability company organized under the laws of New York with a principal place of business located in care of Emmes Asset Management, 420 Lexington Avenue, Suite 900, New York, New York.

11. Defendant, Riley & Dever, P.C. ("Riley & Dever"), is a professional corporation and law firm organized under the laws of Massachusetts with a principal place of business located at Suite 2730, 225 Franklin Street, Boston, Massachusetts.

## JURISDICTION

12. This action is within the jurisdiction of this Court pursuant to 28 U.S.C. §1334, as it arises under and relates to the case under the Bankruptcy Code entitled <u>In re Denise M. Fadili</u>, Chapter 7 Case No. 04-10594-WCH, pending in this Court. It is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(A),(O) and (K).

## VENUE

13. This action is within the venue of this Court pursuant to 28 U.S.C. §1408.

STATEMENT OF FACTS

14. On January 26, 2004 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On March 23, 2005, the case was converted to one under Chapter 7 of the Bankruptcy Code. That same day, Stewart F. Grossman was appointed Trustee.

15. As of the Petition Date, the Debtor owned the Wakefield Property, which was encumbered by a mortgage granted by the Debtor to The Savings Bank on September 8, 1993 to secure a loan in the original principal amount of $200,000.00 (the "Savings Bank Mortgage"). The Savings Bank Mortgage was recorded on September 13, 1993 in the Middlesex County Registry of Deeds in Book 23644, Page 166, and filed in the Middlesex County Registry District of the Land Court as Document No. 918443.

16. As of the Petition Date, the Wakefield Property was also encumbered by a mortgage granted by the Debtor to Saugus Funding Corporation ("SFC") on or about May 24, 1994 to secure a loan in the original principal amount of $1,750,000.00 (the "SFC Mortgage"). The SFC Mortgage was recorded on May 27, 1994 in the Middlesex County Registry of Deeds in Book 24575, Page 147, and filed in the Middlesex County Registry District of the Land Court as Document No. 948504.

17. On February 9, 2005, this Court granted SFC's Motion for Relief from the Automatic Stay to foreclose the Wakefield Mortgage.

18. After the Petition Date, the Savings Bank assigned its right, title and interest in the Savings Bank Mortgage to SFC. On March 18, 2005, the assignment of the Savings Bank Mortgage was recorded in the Middlesex County Registry of Deeds in Book 44827, Page 370, and filed in the Middlesex County Registry District of the Land Court as Document No. 01368160.

19. On June 21, 2005, SFC conducted a foreclosure sale of the Wakefield Property. The highest bidder, David H. Barret, Trustee of the 120 Main Street Realty Trust, ("Barret"), bid $2.4 million. The sale was subject to the Savings Bank Mortgage which had been assigned to SFC.

20. The sale to Barret closed on July 21, 2005. Barret paid to SFC $2.4 million for the purchase of the Wakefield Property, as well as the full amount due under the Savings Bank Mortgage. On July 22, 2005, the discharge of the Savings Bank Mortgage was recorded in the Middlesex County Registry of Deeds in Book 45671, Page 391, and filed in the Middlesex County Registry District of the Land Court as Document No. 1381469.

21. The Surplus Proceeds were generated as a result of the foreclosure sale of the Wakefield Property to Barret.

22. On July 20, 2005, this Court entered a Consent Order Regarding the Claim of SFC and Related Matters ordering, *inter alia*, that the Surplus Proceeds be paid over to the Trustee for the benefit of the Chapter 7 estate.

23. A title search conducted on the Wakefield Property indicates that as of the date of the foreclosure sale, the Wakefield Property was encumbered, in addition to the Savings Bank Mortgage and the SFC Mortgage referenced above, by the following additional matters:[1]

    (a) On October 21, 1996, Mahoney Hawkes recorded a writ of attachment on the Wakefield Property in the amount of $25,000.00 in the Middlesex County Registry of Deeds in Book 26760, Page 245 (the "Mahoney Hawkes Attachment"). On November 25, 1997, the court issued an execution in favor of Mahoney Hawkes in the amount of $24,852.93 ("Mahoney Hawkes Execution"). On December 17, 1997, the Mahoney Hawkes Execution was

---

[1] A chart summarizing the encumbrances and matters of record with respect to the Wakefield Property is attached hereto as "Exhibit A".

recorded on the Wakefield Property in the Middlesex County Registry of Deeds in Book 27987, Page 005, and filed in the Middlesex County Registry District of the Land Court as Document No. 1049642.

(b) On February 21, 1997, SCB recorded a writ of attachment on the Wakefield Property in the amount of $550,000.00 in the Middlesex County Registry of Deeds in Book 27080, Page 107 (the "SCB Attachment"). On April 30, 1997, SCB and the Debtor (and the other defendants in the underlying lawsuit) executed a Settlement Agreement pursuant to which the Debtor (and the other defendants) would, inter alia, deliver to SCB an Agreement for Judgment for damages in the amount of $522,682.33, and SCB would agree to settle the indebtedness owed to it in exchange for a series of payments in the total amount of $150,000.00. On February 3, 1998, judgment in the amount of $522,682.23 entered against the Debtor and the other defendants. On February 26, 1998, the court issued an execution in favor of SCB (the "SCB Execution"). On April 23, 1998, the SCB Execution was recorded on the Wakefield Property in the Middlesex County Registry of Deeds in Book 28482, Page 251, and filed in the Middlesex County Registry District of the Land Court as Document No. 1063069. Upon information and belief, the underlying judgment debt of SCB was paid off in full upon SCB's receipt of $150,000.00 as agreed upon in the Settlement Agreement.

(c) On August 15, 1997, the Lottery Commission recorded a writ of attachment on the Wakefield Property in the amount of $16,395.35 in the Middlesex County

Registry of Deeds in Book 27580, Page 324 (the "Lottery Commission Attachment").

(d) On June 17, 1999, Bay State Framing filed a mechanic's lien notice of contract for unpaid labor and services on the Wakefield Property in the amount of $63,640.00 in the Middlesex County Registry District of the Land Court as Document No. 1110053 (the "Bay State Framing Mechanic's Lien").

(e) On August 11, 2000, Beals & Thomas recorded a writ of attachment on the Wakefield Property, in the amount of $30,000.00, in the Middlesex County Registry of Deeds in Book 31706, Page 204, and filed in the Middlesex County Registry District of the Land Court as Document No. 1146489 (the "Beals & Thomas Attachment"). On February 21, 2001, the court issued an execution in the amount of $28,430.41 ("Beals & Thomas Execution"). On March 23, 2001, the Beals & Thomas Execution was recorded on the Wakefield Property in the Middlesex County Registry of Deeds in Book 32548, Page 300, and filed in the Middlesex County Registry District of the Land Court as Document No. 1165862.

(f) On December 11, 2000, the Debtor filed her declaration of homestead on the Wakefield Property pursuant to M.G.L. c. 188 § 1, in the amount of $300,000.00, in the Middlesex County Registry District of the Land Court as Document No. 1158995 (the "Debtor's Homestead").

(g) On December 11, 2000, Rauseo recorded a writ of attachment on the Wakefield Property, in the amount of $30,000.00, in the Middlesex County Registry of Deeds in Book 32124, Page 055 (the "Rauseo Attachment"). The Court issued an execution on August 21, 2002 in the amount of $33,009.16 (the "Rauseo Execution"). On November 26, 2002, the Rauseo Execution was recorded in the Middlesex County Registry District of the Land Court as Document No. 1241422.

(h) On June 5, 2003, Emmes Capital recovered a judgment against the Debtor, among others, in the amount of $6,201,788.02. On July 14, 2003, the Court issued an execution in favor of Emmes Capital in the amount of $6,281,585.15 (the "Emmes Capital Execution"). On September 11, 2003, the Emmes Capital Execution was recorded on the Wakefield Property in the Middlesex County Registry of Deeds in Book 41244, Page 094, and filed in the Middlesex County Registry District of the Land Court as Document No. 1291816.

(i) On June 18, 2004, after the Petition Date, the Debtor granted a mortgage on the Wakefield Property to Riley & Dever to secure payment in the original principal amount of $100,000.00 ("Riley & Dever Mortgage"). On June 25, 2004, the Riley & Dever Mortgage was recorded on the Wakefield Property in the Middlesex County Registry of Deeds in Book 43139, Page 198, and filed in the Middlesex County Registry District of the Land Court as Document No. 01339202.

COUNT I
(Fed. Bank. R. 7001(2)—Determination of Validity of Lien)
(11 U.S.C. §544(a); M.G.L. c. 236 §49A)
(11 U.S.C. §502—Allowance of Claim or Interest)
Mahoney Hawkes, LLP

24. The Trustee repeats and incorporates herein paragraphs 1 – 23 above.

25. On October 21, 1996, the Mahoney Hawkes Attachment was recorded.

26. On December 17, 1997, the Mahoney Hawkes Execution was recorded.

27. Mahoney Hawkes failed to levy by way of set-off or by sale on the Mahoney Hawkes Execution within six years from the date on which it was recorded.

28. Mahoney Hawkes failed to re-file the Mahoney Hawkes Execution at the Middlesex County Registry of Deeds and/or at the Middlesex County Registry of the Land Court within six years of its initial recordation.

29. Therefore, as of the Petition Date, the lien created by the Mahoney Hawkes Execution was voidable pursuant to M.G.L. c. 236 § 49A.

30. Upon information and belief, Mr. Madoff as Creditor Trustee has succeeded the title to the Mahoney Hawkes claim against the Debtor.

31. Pursuant to Bankruptcy Code §544(a), the Trustee may avoid any transfer of an interest in property or any obligation incurred by the Debtor that is voidable under applicable law by a hypothetical creditor with a judicial lien or execution on the Wakefield Property or a hypothetical bona fide purchaser of the Wakefield Property.

32. To the extent that the lien created by the Mahoney Hawkes Execution is avoided under Bankruptcy Code §544(a), the Trustee objects, pursuant to Bankruptcy Code §§506(a) and 502(a), to Mahoney Hawkes' proof of claim, based on the underlying lien created by the Mahoney Hawkes Execution in the Surplus Proceeds, as secured, and suggests that the Court allow the Mahoney Hawkes claim as unsecured.

## COUNT II
(Fed. Bank. R. 7001(2)—Determination of Validity of Lien)
(11 U.S.C. §544(a); M.G.L. c. 236 §4)
Stoneham Co-Operative Bank

33. The Trustee repeats and incorporates herein paragraphs 1 – 23 above.

34. On February 21, 1997, the SCB Attachment was recorded.

35. On February 26, 1998, the SCB Execution was issued.

36. On April 23, 1998, the SCB Execution was recorded.

37. Upon information and belief, the underlying judgment debt of SCB was fully settled and satisfied.

38. On December 4, 2000, SCB assigned its right, title and interest in the SCB Execution and related judgment to Zinc Spur. Neither SCB nor Zinc Spur recorded a notice of the assignment.

39. SCB failed to record the SCB Execution within forty days of the date on which it was issued.

40. Therefore, as of the Petition Date, the lien created by the SCB Execution was voidable pursuant to M.G.L. c. 236 §4.

41. Pursuant to Bankruptcy Code §544(a), the Trustee may avoid any transfer of an interest in property or any obligation incurred by the Debtor that is voidable under applicable law by a hypothetical creditor with a judicial lien or execution on the Wakefield Property or a hypothetical bona fide purchaser of the Wakefield Property.

## COUNT III
(Fed. Bank. R. 7001(2)—Determination of Validity of Lien)
(11 U.S.C. §544(a); M.G.L. c. 236 §4)
Zinc Spur Realty Trust

42. The Trustee repeats and incorporates herein paragraphs 1 – 23 above.

43. On February 21, 1997, the SCB Attachment was recorded.

44. On February 26, 1998, the SCB Execution was issued.

45. On April 23, 1998, the SCB Execution was recorded.

46. Upon information and belief, the underlying judgment debt of SCB was fully settled and satisfied.

47. On December 4, 2000, SCB assigned its right, title and interest in the SCB Execution and related judgment to Zinc Spur.  Neither SCB nor Zinc Spur recorded a notice of the assignment.

48. SCB failed to record the SCB Execution within forty days of the date on which it was issued.

49. Therefore, as of the Petition Date, the lien created by the SCB Execution assigned to Zinc Spur was voidable pursuant to M.G.L. c. 236 §4.

50. Pursuant to Bankruptcy Code §544(a), the Trustee may avoid any transfer of an interest in property or any obligation incurred by the Debtor that is voidable under applicable law by a hypothetical creditor with a judicial lien or execution on the Wakefield Property or a hypothetical bona fide purchaser of the Wakefield Property.

COUNT IV
(Fed. Bank. R. 7001(2)—Determination of Validity of Lien)
(11 U.S.C. §544(a); M.G.L. c. 223 §115)
Commonwealth of Massachusetts/Massachusetts State Lottery Commission

51. The Trustee repeats and incorporates herein paragraphs 1 – 23 above.

52. On August 15, 1997, the Lottery Commission Attachment was recorded.

53. The Lottery Commission failed to bring the Lottery Commission Attachment forward within six years.

54. Therefore, as of the Petition Date, the lien created by the Lottery Commission Attachment was voidable pursuant to M.G.L. c. 223 §115.

55. Pursuant to Bankruptcy Code §544(a), the Trustee may avoid any transfer of an interest in property or any obligation incurred by the Debtor that is voidable under

applicable law by a hypothetical creditor with a judicial lien or execution on the Wakefield Property or a hypothetical bona fide purchaser of the Wakefield Property.

## COUNT V
(Fed. Bank. R. 7001(2)—Determination of Validity of Lien)
(11 U.S.C. §544(a); M.G.L. c. 254 §5)
Bay State Framing

56. The Trustee repeats and incorporates herein paragraphs 1 – 23 above.

57. On June 17, 1999, Bay State Framing recorded the Bay State Framing Mechanic's Lien.

58. Subsequent to its recordation of the Bay State Framing Mechanic's Lien, upon information and belief, Bay State Framing failed to bring a civil action against the Debtor in the Middlesex County Superior Court or in the Massachusetts District Court to enforce such lien.

59. Upon information and belief, Bay State Framing failed to record a copy of any complaint(s) brought against the Debtor within thirty days of any action it commenced against the Debtor.

60. Therefore, as of the Petition Date, the Bay State Framing Mechanic's Lien was voidable pursuant to M.G.L. c. 254 §5.

61. Pursuant to Bankruptcy Code §544(a), the Trustee may avoid any transfer of an interest in property or any obligation incurred by the Debtor that is voidable under applicable law by a hypothetical creditor with a judicial lien or execution on the Wakefield Property or a hypothetical bona fide purchaser of the Wakefield Property.

## COUNT VI
(11 U.S.C. §506—Determination of Secured Status)
Beals and Thomas, Inc.

62. The Trustee repeats and incorporates herein paragraphs 1 – 23 above.

63. On August 11, 2000, the Beals & Thomas Attachment was recorded.

64. On February 21, 2001, the Beals & Thomas Execution was issued.

65. On March 23, 2001, the Beals & Thomas Execution was recorded.

66. Therefore, pursuant to Bankruptcy Code §506(a), Beals & Thomas appears to have a secured claim in the Surplus Proceeds to the extent of the value of Beals & Thomas' interest in such Surplus Proceeds.

67. In order to determine the extent of the value of Beals & Thomas' interest in the Surplus Proceeds pursuant to Bankruptcy Code §506(a), Beals & Thomas must submit proof as to the amount of its claim.

COUNT VII
(Fed. Bank. R. 7001(2)—Determination of Validity of Lien)
(11 U.S.C. §544(a); M.G.L. c. 236 §4)
John P. Rauseo, Esq.

68. The Trustee repeats and incorporates herein paragraphs 1 – 23 above.

69. On December 11, 2000, the Rauseo Attachment was recorded.

70. On August 21, 2002, the Rauseo Execution was issued.

71. On November 26, 2002, the Rauseo Execution was recorded.

72. Rauseo failed to record the Rauseo Execution within forty days of the date on which it was issued.

73. Therefore, the lien created by the Rauseo Execution on the Wakefield Property was voidable as of the Petition Date by operation of applicable Massachusetts law pursuant to M.G.L. c. 236 §4.

74. Pursuant to Bankruptcy Code §544(a), the Trustee may avoid any transfer of an interest in property or any obligation incurred by the Debtor that is voidable under applicable law by a hypothetical creditor with a judicial lien or execution on the Wakefield Property or a hypothetical bona fide purchaser of the Wakefield Property.

COUNT VIII
(11 U.S.C. §506—Determination of Secured Status)
(11 U.S.C. §502—Allowance of Claim or Interest)
Emmes Capital, LLC

75. The Trustee repeats and incorporates herein paragraphs 1 – 23 above.

76. On June 5, 2003, Emmes Capital recovered a judgment against the Debtor.

77. On July 14, 2003, the Emmes Capital Execution was issued.

78. On September 11, 2003, the Emmes Capital Execution was recorded.

79. On February 1, 2005, Emmes Capital filed a proof of claim in the Debtor's bankruptcy case. Emmes Capital claimed that, as of the Petition Date, the Debtor owed an outstanding balance on the underlying judgment debt in the amount of $6,281,585.15.

80. Therefore, pursuant to Bankruptcy Code §506(a), Emmes Capital appears to have a secured claim in the Surplus Proceeds to the extent of the value of Emmes Capital's interest in such proceeds.

81. Pursuant to Bankruptcy Code §506(a), the Court may determine the extent of the value of Emmes Capital's interest in the Surplus Proceeds.

82. To the extent that the amount of Emmes Capital's proof of claim exceeds its secured interest in the Surplus Proceeds as determined by this Court pursuant to Bankruptcy Code §506(a), the Trustee objects, pursuant to Bankruptcy Code §502(a), to the balance of Emmes Capital's proof of claim as secured and suggests that the Court allow the balance of its claim as unsecured.

COUNT IX
(11 U.S.C. §549—Post Petition Transaction)
(11 U.S.C. §502—Allowance of Claim or Interest)
Riley & Dever, P.C.

83. The Trustee repeats and incorporates herein paragraphs 1 – 23 above.

84. On June 18, 2004, after the Petition Date, the Debtor granted the Riley & Dever Mortgage to secure payment in the original principal amount of $100,000.

85. On June 25, 2004, the Riley & Dever Mortgage was recorded.

86. The Debtor's granting of the Riley & Dever Mortgage was not authorized under the Bankruptcy Code or by the Court.

87. Pursuant to Bankruptcy Code §549(a), the Trustee may avoid the Debtor's transfer of the Riley & Dever Mortgage as an unauthorized post-petition transfer.

88. Pursuant to Bankruptcy Code §551, any transfer avoided under Bankruptcy Code §549 is preserved for the benefit of the estate.

89. To the extent that the Debtor's transfer of the Riley & Dever Mortgage is avoided under Bankruptcy Code §549(a) as an unauthorized post-petition transfer and preserved under Bankruptcy Code §549 for the benefit of the estate, the Trustee objects, pursuant to Bankruptcy Code §§506(a) and 502(a), to Riley & Dever's proof of claim, based on the underlying lien created by the Riley & Dever Mortgage in the Surplus Proceeds, as secured, and suggests that the Court allow the Riley & Dever claim as unsecured.

### COUNT X
(11 U.S.C. §522 (g))
Denise M. Fadili

90. The Trustee repeats and incorporates herein paragraphs 1 – 23 above.

91. On December 11, 2000, the Debtor's Homestead was recorded. In Schedule C of her bankruptcy schedules, the Debtor claims an exemption in the Wakefield Property in the amount of $300,000 pursuant to M.G.L. c. 188 §1.

92. On June 18, 2004, after the Petition Date, the Debtor voluntarily granted the Riley & Dever Mortgage to secure payment in the original principal amount of $100,000, which mortgage was recorded on June 25, 2004.

93. The Debtor cannot avoid the Riley & Dever Mortgage as impairing her exemption under Bankruptcy Code §522(f)(1) since it is neither a judicial lien nor a purchase money security interest in personality.

94.     In light of the *voluntary* nature of the Debtor's post-petition transfer of the Riley & Dever Mortgage, and in light of the fact that the Debtor cannot avoid the Riley & Dever Mortgage under Bankruptcy Code §522(f)(1)(B), the Debtor is precluded under Bankruptcy Code §522(g) from exempting the value of the Riley & Dever Mortgage avoided by the Trustee pursuant to Bankruptcy Code §549(a) and preserved for the estate pursuant to Bankruptcy Code §551.

WHEREFORE, the Trustee prays that this Court:

1. Enter a judgment pursuant to Bankruptcy Code §544(a) avoiding the lien created by the Mahoney Hawkes Execution, declaring that Mahoney Hawkes does not have a security interest or lien in the Surplus Proceeds and determining pursuant to Bankruptcy Code §§506(a) and 502(a) that Mahoney Hawkes' claim is unsecured;

2. Enter a judgment pursuant to Bankruptcy Code §544(a) avoiding the lien created by the SCB Execution and declaring that SCB does not have a security interest or lien in the Surplus Proceeds;

3. Enter a judgment pursuant to Bankruptcy Code §544(a) avoiding the lien created by the SCB Execution, as assigned to Zinc Spur, and declaring that SCB and Zinc Spur do not have a security interest or lien in the Surplus Proceeds;

4. Enter a judgment pursuant to Bankruptcy Code §544(a) avoiding the lien created by the Lottery Commission Attachment and declaring that the Lottery Commission does not have a security interest or lien in the Surplus Proceeds;

5. Enter a judgment pursuant to Bankruptcy Code §544(a) avoiding the Bay State Framing Mechanic's Lien and declaring that Bay State Framing does not have a security interest or lien in the Surplus Proceeds;

6. Determine pursuant to Bankruptcy Code §506(a) the extent to which Beals & Thomas' claim is secured and/or unsecured;

7. Enter a judgment pursuant to Bankruptcy Code §544(a) avoiding the lien created by the Rauseo Execution and declaring that Rauseo does not have a security interest or lien in the Surplus Proceeds;

8. Determine pursuant to Bankruptcy Code §506(a) and §502(a) the extent to which Emmes Capital's claim is secured and/or unsecured;

9. Enter a judgment avoiding the Debtor's transfer of the Riley & Dever Mortgage as an unauthorized post-petition transfer under Bankruptcy Code §549(a), preserving the lien of the Riley & Dever Mortgage in the Surplus Proceeds for the benefit of the estate under Bankruptcy Code §551 and determining pursuant to Bankruptcy Code §§506(a) and 502(a) that Riley & Dever's claim is unsecured;

10. Enter a judgment pursuant to Bankruptcy Code §522(g) that the Debtor's homestead exemption in the Surplus Proceeds is subject to the lien of the Riley & Dever Mortgage which the Trustee may preserve for the benefit of the estate; and

11. Grant the Trustee such further relief as is just.

        STEWART F. GROSSMAN,
        CHAPTER 7 TRUSTEE, PLAINTIFF

        By his attorneys,

        /s/ Georgia J. Asimakopoulos
        Melvin S. Hoffman, BBO# 237120
        Georgia J. Asimakopoulos, BBO# 658232
        LOONEY & GROSSMAN LLP
        101 Arch Street
        Boston, MA 02110
        (617) 951-2800

Dated: February 15, 2006