UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>DENISE M. FADILI,<br>      Debtor | Chapter 7<br>Case No. 04-10594-WCH |
| STEWART F. GROSSMAN,<br>CHAPTER 7 TRUSTEE,<br>      Plaintiff<br>v.<br><br>DAVID B. MADOFF AS CREDITOR<br>TRUSTEE UNDER CONFIRMED PLAN OF<br>REORGANIZATION OF MAHONEY<br>HAWKES, LLP, et al.,<br>      Defendant | Adversary Proceeding<br>Case No. 06-1101 |

## MEMORANDUM OF DECISION
## REGARDING MOTIONS FOR SUMMARY JUDGMENT

I. Introduction

Stewart F. Grossman, Chapter 7 Trustee (the "Trustee"), filed this adversary proceeding to determine the rights of various claimants to the surplus funds from the foreclosure of a mortgage on real estate of Denise M. Fadili (the "Debtor"). The Trustee further seeks to avoid a mortgage which the Debtor granted to Riley & Dever (the "Firm") while a debtor-in-possession. In response to the Trustee's request for summary judgment against the Firm, the Firm filed a cross-motion for summary judgment on the grounds that it is entitled to a portion of the funds

1

based upon the mortgage. For the reasons set forth below, I will deny both motions summary judgment and hold a trial with respect to the Firm's defense under 11 U.S.C. §549(c).

II. Background

The Debtor filed for relief under Chapter 11 on January 26, 2004. In Schedule A of her amended petition, the Debtor listed her home in Wakefield, Massachusetts (the "Property") with a fair market value of $3,000,000 and secured claims of $1,272,261.60.[1] She listed additional properties. In Schedule B, the Debtor did not list as an asset a claim in a lawsuit or any claim against the Firm. In Schedule C, the Debtor claimed an exemption of $300,000 in the Property under Mass. Gen. Laws ch. 188, § 1 (the "Homestead"), to which no one has interposed an objection. In Schedule D, the Debtor listed a number of creditors as holders of first mortgages but did not identify the properties to which they attached. She listed a first mortgage of The Savings Bank for $171,261.63 and a second mortgage of Saugus Funding, LLC of $1,100,000.[2] In Schedule F, the Debtor listed unsecured debts of $6,408,360 and those debts did not include one to the Firm. Those debts included various creditors who held liens against the Property including the claim of Emmes Capital LLC which held an execution of over $6,000,000 based upon a prior judgment.[3] The Debtor did not list in her Statement of Financial Affairs that she

---

[1] In September, 2004, the first mortgagee filed a motion for relief from stay in which it indicated that its appraisal reflected that the Property was worth $1,900,000. In a motion to establish value which the Debtor filed in November, 2004, the Debtor valued the Property at $1,900,000.

[2] The parties agree that the first mortgagee assigned its mortgage to Saugus Funding Corporation postpetition.

[3] In a motion to avoid this lien, which has been continued generally, the Debtor represented that this execution was recorded at the registry of deeds in October, 2003. Case No. 04-10594-WCH, Docket No. 139. The similar lien avoidance motions for the other liens were

2

was a plaintiff in a pending state court civil action.

On June 18, 2004 and while a debtor-in-possession, the Debtor granted the Firm a mortgage on the Property (the "Mortgage"). The Mortgage recited that the Debtor was granting it to secure payment of $100,000 or other such amounts owing from the Debtor's husband to the Firm pursuant to a fee agreement between the Firm and the Debtor's husband.[4] The mortgage was recorded on June 25, 2004.[5] There are no entries in the docket of the main case which

---

also continued generally. See Case No. 04-10594, Docket Nos. 213 - 218.

[4]The fee agreement between the Debtor's husband and the Firm is dated November 21, 2002. It is attached as Exhibit B to the Statement, defined below. It recites that the Debtor's husband retained the Firm to represent him with respect to his dispute with A. Marotta, L. Marotta and A. Arcidi concerning Caruso Music Co. and Foods, Inc. of Saugus. The only other party to which the fee agreement refers as a co-obligor for the legal fees is Foods Inc. of Saugus. The fee agreement provides for a 1% monthly finance charge.
  In the pleadings filed in this case, the parties did not provide me with a description of the state court litigation. In a motion to compromise which the Trustee filed in the Debtor's main case and in the main case of the Debtor's husband, In re Adel Fadili, Case No. 05-17304-RS, there are documents which describe the litigation and of which I may take judicial notice.
  On March 6, 2007, the Trustee filed a motion to compromise the claim the Debtor held against Caruso Music Company, A. Marotta, L. Marotta and Arcidi among others. In it, the Trustee explains that despite the fact that the Debtor did not list the asset in her petition, on the date the Debtor filed she was a plaintiff in a civil action in the Superior Court Department, Essex County, Case No. EESCV 2000-2225. The suit related to a failed stock purchase agreement. The court entered judgment for the defendants in the fall of 2004. The Debtor and her husband filed an appeal and the Trustee's motion is an attempt to settle the appeal. On March 13, 2007, I entered an order approving the settlement. The settlement provides that the defendants in the civil action will pay to the Trustee $25,000 in full satisfaction of any claims that the Debtor and/or the Chapter 7 estate may hold against the defendants. This civil action will hereinafter be referred to as the "Litigation."

[5]The Firm has filed a proof of claim in this case for its secured claim of $100,000. In the proof of claim, the Firm contends that its claim is against the Debtor's interest in the Property including any homestead exemption but is not a claim against the general assets of the estate. In the main case, the Debtor filed an objection to this claim. See Case No. 04-10594-WCH, Docket No. 409 to which the Firm filed a response. At the hearing on the objection and the response, the Debtor withdrew the objection to claim on the basis that the present adversary proceeding would resolve the matter.

3

reflect that the Debtor or the Firm sought court approval to grant the mortgage and incur the debt or to hire counsel to represent her in the Litigation. She never amended her petition to include any pre-petition claim of the Firm or list the Litigation as an asset.

On February 15, 2005, the United States Trustee moved to convert the case on the grounds that creditors had obtained relief from stay to exercise their state court remedies with respect to the Debtor's real estate and the Debtor had insufficient income to support a plan of reorganization. The United States Trustee did not refer to the Mortgage. On March 23, 2005, I entered an order converting the case from Chapter 11 to Chapter 7. Thereafter, the Trustee was appointed.

Saugus Funding Corporation conducted a foreclosure of the Property in June, 2005. The sale price was $2,400,000. In July 2005, I signed a Consent Order Regarding Claim of Saugus Funding Corporation and Related Matters (the "Consent Order"). The Consent Order provided that Saugus Funding Corporation would retain and not distribute $2,100,000. It provided for the payment of approximately $87,500 to the auctioneer and $192,000 for legal fees. It lastly provided that $300,000, or the balance of the proceeds, would be paid to the Trustee and made subject to an interpleader action.[6]

In December 2005, the Trustee, Saugus Funding Corporation and related entities and Emmes Capital, LLC entered into a stipulation. The stipulation provided that the amount that had been escrowed pursuant to the Consent Order would be used to pay the Trustee $280,000 and

---

[6]The transcript of the hearing reflects that at the commencement of the hearing, the parties were working on an agreement with respect to the resolution of certain claims objections on the eve of the sale of the Property. I adjourned the hearing to afford the parties the opportunity to craft an order. There was no further hearing and instead, I signed the Consent Order later in the day. The transcript of the hearing does not contain any discussion of the nature of the $300,000.

4

that the remainder would be paid to Saugus Funding Corporation. Saugus Funding Corporation then would apply a portion of its payment to pay certain attorneys fees and a carve-out to Emmes Capital, LLC. I approved the stipulation on December 20, 2005.

The Transcript of that hearing contains the following representation of the Trustee with respect to the $300,000 that was paid to the Trustee under the Consent Order (the "Proceeds"):

> I believe from a brief conversation with [Debtor's counsel] prior to the hearing, that the debtor's concern was the preservation of her Homestead interest in the proceeds of the foreclosure and didn't want to lose the right to be able to assert that Homestead; and I reminded him, and I'll put it on the record as well, that that is already protected by [sic] $300,000 fund that the Trustee is holding from the foreclosure proceeds. . . . And to the extent that Ms. Fadili is able to successfully assert her Homestead rights, she will have them because they cannot exceed $300,000 under your Massachusetts law, based on the date of the filing of this case. So the money is already in hand.[7]

The Trustee filed his complaint against ten defendants in early 2006. Of those defendants, only three remain,[8] the Debtor, Emmes Capital, LLC and the Firm. By his complaint, the Trustee seeks a determination of the amount and validity of the alleged secured claims against the $300,000 he is holding after the foreclosure of the Property and to avoid any postpetition transfers of interest in the Property.

In his complaint, the Trustee asserts that at the time of the foreclosure, the Property was subject to several other encumbrances. With respect to the Mortgage, the Trustee contends that it is an avoidable postpetition transfer which should be preserved for the benefit of creditors and

---

[7]Transcript of Hearing on December 20, 2005, Case No. 04-10594-WCH, Docket No. 438.

[8]Default judgments were entered against Essam Al-Tamimi, Trustee of Inc-Spur Realty Trust, Mass. State Lottery Commissioner of Mass., Bay State Framing, Inc., Beals & Thomas, Inc. and John P. Rauseo. The Trustee entered into agreements for judgment with Stoneham Co-Operative Bank and David B. Madoff, Creditor Trustee.

5

that the Firm holds only an unsecured claim. With respect to the Debtor, the Trustee contends that the Debtor cannot avoid the Mortgage and is precluded from exempting the value of the mortgage pursuant to 11 U.S.C. § 522(g).

In its answer, the Firm argued, *inter alia*, that at the time the Debtor granted the Mortgage, the Property was not property of the estate and that the Firm is a good faith purchaser pursuant to 11 U.S.C. § 522(c). In its counterclaim, the Firm contends that the Proceeds represent the proceeds of the Homestead which is not property of the estate and which must be turned over to the Firm in accordance with the priorities set forth in Mass. Gen. Laws ch. 188. The Firm also inserted a crossclaim against the Debtor in which the Firm contends that as the sole remaining consensual lien holder, the Mortgage takes priority over the Homestead and that the Proceeds should be immediately turned over to the Firm. In her answer, the Debtor denied the allegations of the Complaint that pertained to her.[9]

In November of 2006, the Trustee and the Firm submitted an agreed statement of facts (the "Statement"). In it, these parties agree that the Debtor contends that she is entitled to the full amount of the Proceeds pursuant to the Homestead. The Firm confirmed that it obtained the Mortgage to secure the fees which the Debtor's husband owed to it and that after the Mortgage, it continued to render services pursuant to the fee agreement. It makes no representation about any obligation which the Debtor owed to the Firm. Attached to the Statement is the Mortgage, the fee agreement between the Debtor's husband and the Firm, and a fee history.

The Mortgage provides;

Denise Fadili of Wakefield, Middlesex, County, Massachusetts ("Mortgagor"), for

---

[9]Both the Trustee and the Debtor filed answers denying the counterclaim and crossclaim.

6

consideration paid, hereby grants to Riley & Dever, P.C. ("Mortgagee"), 210 Broadway, Suite 201, Lynnfield, MA 01940, with MORTGAGE COVENANTS, to secure the payment of One Hundred Thousand Dollars ($100,000) or other such amounts as may be due an owing pursuant to various statements of account from the Mortgagee to the Mortgagor's husband, Adel Fadili, with interest and any other charges due thereon, payable as provided in a certain Fee Agreement dated November 21, 2002 between Mortgagee and said Adel Fadili (the "Note"), to secure the performance of all covenants and agreements contained herein and in the Note, the land in, Wakefield . . .

The fee history reflects that on the day she filed for relief, the Firm was owed approximately $901. In May, 2004, the Firm was owed approximately $115,000. On the date of the Mortgage, the Firm was owed approximately $56,000.[10] At the time it withdrew its representation in the Litigation, an event described below, it appears that the Firm was owed approximately $88,000. That amount has increased due to monthly interest charges.

The Trustee moved for summary judgment against the Firm on the complaint and with respect to the counterclaim. In his motion, the Trustee asserts that there is no dispute that the Mortgage was not authorized. The Trustee contends that to the extent that the Firm argues that the Mortgage applied to the Debtor's interest in the Property which pertained to the Homestead, that argument is legally flawed. In support he cites to Judge Boroff's decision in *In re Guido*, 344 B.R. 193 (Bankr. D. Mass. 2006). The Trustee further contends that the Firm's counterclaim for turnover is legally flawed because a creditor cannot bring a claim for turnover.

In its response, the Firm contends that summary judgment should not be granted to the Trustee because there was no transfer of property of the estate. That is, that after the objection period for the Debtor's homestead exemption expired, the Property was no longer property of the

---

[10]There is no indication in the fee history who made the payments to the Firm particularly the payments exceeding $50,000 in May, 2004. There is no indication in the fee history that the payments were attributed to any other client other than Adel Fadili.

7

estate because there was no equity remaining above the consensual liens and the homestead that could benefit the estate. In support, the Firm cites to *In re Cunningham*, 2006 WL 3438560 (D. Mass. 2006), *In re McCabe*, 2006 WL 3392469 (Bankr. D. Mass. 2006), and *In re Reed*, 184 B.R. 733 (Bankr. W.D. Tex. 1995).

If I determine that estate property was transferred, the Firm contends that it was a good faith purchaser without knowledge of the underlying bankruptcy proceeding. The Firm contends that it received the Mortgage so that the Firm would continue to represent the Debtor and her husband in the Litigation. The Firm contends that when the foreclosure sale occurred, the Mortgage was a third mortgage on the Property and its interest must attach to the Proceeds. Lastly, the Firm argues that because the Mortgage subordinated the Homestead, it attached to the Proceeds with priority over the Homestead.

In the affidavit of Attorney Frederick W. Riley, which the Firm attached to its opposition to the Trustee's motion for summary judgment, Attorney Riley asserts that the Debtor's husband had retained the firm to represent both the Debtor and her husband in a state court lawsuit. The Debtor granted the Mortgage to secure the legal fees. Attorney Riley also represented that he had no knowledge of the bankruptcy filing until well after the Debtor granted the mortgage. The affidavit of Attorney Joseph P. Dever contains the same representations.[11] Relying on these

---

[11] In March of 2005, the Debtor's original counsel in the Chapter 11 moved to withdraw his representation of the Debtor. Case No. 04-10594, Docket No. 235. As grounds, he offered that the Debtor had been less than candid with respect to her financial affairs. Counsel explained that he recently had been informed that the Debtor had granted a mortgage in June of 2004 in the amount of $100,000. The Mortgage was listed in a relief from stay motion which the Savings Bank filed in September of 2004. Counsel listed the Mortgage in the lien avoidance motion which he filed in November, 2004 and his fee application which he filed in April, 2005 reflects that he discussed the issue with the Debtor in January, 2005 and the United States Trustee in February of 2005. There is no indication in the detailed entries of the fee application that counsel

documents, the Firm filed a cross-motion for summary judgment.

The Trustee filed an objection to the cross-motion for summary judgment. The Trustee points to the fact that Massachusetts is a title theory state. That is, upon granting the Firm the Mortgage, the Debtor transferred title to the Property subject to defeasance upon the payment of the Mortgage. The Trustee argues that on the date of the Mortgage, the Property was property of the estate and that the granting of the Mortgage was a transfer. The Trustee asserts that the Firm did not and could not take a mortgage on solely the Homestead. The Trustee also argues that the defense available under 11 U.S.C. § 549(c) is inapplicable because the Firm did not transfer "present fair equivalent value" rather, the Mortgage was for the then outstanding balance for services rendered and future fees. That subsection, he contends, cannot be invoked for antecedent debts.

In the pleading which the Debtor filed in response, the Debtor contends that based upon the Trustee's representations at the December hearing, he is estopped to contest the Homestead. She disputes the amount of the Firm's claim. Attached to the response are letters from the Firm to the Debtor's husband which indicate that the Firm intended to withdraw from the case in September, 2004 for lack of payment.[12] The Debtor also attached her affidavit in which she explained that the Firm represented her in the state court action and disputed the amount of the fees she and her husband owed the Firm. She included an invoice from the Firm to her husband and the motion to withdraw which she contends the Firm filed in the state court action. In the

---

to the Debtor filed a notice of the Debtor's petition with the registry of deeds.

[12]The letters are addressed to the Debtor's husband and on page two of some of the letters the topic line references the Debtor and her husband.

9

motion, the Firm explains that it was withdrawing its representation of the seven plaintiffs which included the Debtor.

At the hearing on the present motions for summary judgment, the Trustee, the Firm and the Debtor appeared and presented their arguments as set forth above. I then took the matter under advisement.

III. Analysis

A. Standard Regarding Motion for Summary Judgment

Summary judgment should only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56(c)). The burden of proof is upon the moving party in the first instance. *In re Wang Laboratories, Inc.*, 155 B.R. 289, 290 (Bankr. D. Mass. 1993). To defeat the motion, the opposing party must produce substantial evidence of a genuine dispute as to a material fact. *Darr v. Muratore,* 8 F.3d 854, 859 (1st Cir. 1993); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904 (1976). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

B. 11 U.S.C. § 549

In order to prevail, the Trustee must establish that there was (1) a transfer; (2) of estate property; (3) that was not authorized; (4) after the commencement of the case.[13] The Trustee has met the first factor as the granting of a mortgage is a transfer. *See In re Earls*, 2006 WL

---

[13] 11 U.S.C. § 549(a).

3150923 (Bankr. M.D. N.C.); *In re Montoya*, 285 B.R. 490, 494 (Bankr. D. NM. 2002); *Brown v. Harris (In re Auxano, Inc.)*, 96 B.R. 957 (Bankr. WD. Mo. 1989). *See also* 11 U.S.C. § 101(54) (BAPCPA amendment clarifying that definition of transfer includes creation of lien).

In order to assess the second factor, I turn to 11 U.S.C. § 541(a) which provides that, with certain inapplicable exceptions, the commencement of the case creates an estate which includes all legal or equitable interests of a debtor. The Debtor's interest in the Property at the time she filed for relief is determined by the laws of Massachusetts. *Butner v. United States*, 440 U.S. 48 (1979)

As Judge Boroff has explained, under the laws of the Commonwealth, a mortgage is a deed of conveyance transferring a fee interest to the mortgagee which is defeasible upon the performance of the conditions in the mortgage.[14] *See In re Guido*, 344 B.R. 193, 199 (Bankr. D. Mass. 2006); *see also In re Crichlow*, 322 B.R. 229, 237 (Bankr. D. Mass. 2004) (agreeing mortgagee holds title to real estate and the mortgagor retains the right of possession and redemption); *In re Grassie*, 293 B.R. 829 (Bankr. D. Mass. 2003) (holding equity of redemption became property of estate because sale was not completed at time of filing). Upon filing for relief, the Debtor held these latter two rights and they were transferred to the estate. Those rights are not extinguished until the mortgage is foreclosed. *Id*. After those rights are extinguished, the

---

[14]Based upon this mechanism, it is incredible that the Firm could suggest that the Mortgage covered only the Debtor's interest in the Homestead. Indeed, Firm would not have thought to tailor the Mortgage because, based upon its affidavits, at that time it received the Mortgage it did not know of the bankruptcy. In any event, there is no such limiting language in the Mortgage to which the Firm has directed this Court.

11

Debtor continues to have the certain rights notwithstanding the sale.[15] Absent a foreclosure, the right of possession and redemption can be withdrawn as property of the estate by various means including a sale of the Property, the closing of the case or confirmation of a plan. None of these events had occurred at the time the Debtor granted the Mortgage.

At the time the Debtor granted the Mortgage, the estate held the right of possession and equity of redemption in the property.[16] That the Debtor may have held no equity above the liens and the Homestead does not serve to render the Property no longer property of the estate. The cases to which the Firm cites are not to the contrary. In *In re McCabe*, 356 B.R. 314 (Bankr. D. Mass. 2006), I discussed the issue of an unopposed exemption serving to withdraw the debtor's interest in a limited liability corporation from property of the estate. In that case, the debtor had claimed that the amount of his exemption exceeded the value of the asset. There were no other liens on the assets and the debtor held no residual interest. In this case, however, at the time of the Mortgage, while the Property appears to not have had any equity, the estate continued to have an interest in the Property based upon the equity of redemption and right of possession. Those are not extinguished under Massachusetts law simply because the mortgages and liens may exceed the fair market value of the real estate. For that reason *McCabe* is not applicable.

Likewise, the Firm's citation to cases such as *Pasquina v. Cunningham (In re Cunningham)*, 354 B.R. 547 (D. Mass. 2006) is misplaced. In *Cunningham*, Judge Saylor had to

---

[15] *See Crichlow*, 322 B.R. at 237; *see also In re Simcock*, 152 B.R. 7 (Bankr D. Me. 1993) (holding creditor must seek relief from stay even after expiration of redemption period).

[16] For this reason, cases which hold that there is no estate interest when a debtor holds bare legal title and has no equity are inapplicable. *See e.g. Cage v. Wyo-Ben, Inc. (In re Ramba, Inc.)*, 437 B.R. F.3d 457, 460-1 (5th Cir. 2006); *Jenkins v. Chase Home Mtg. Corp., (In re Maple Mortg., Inc.)*, 81 F.3d 592, 595 (5th Cir. 1996).

12

consider whether a creditor who held a nondischargeable debt could satisfy the debt with the proceeds of the sale of the debtor's homestead. Judge Saylor ruled that the proceeds from the sale of the property subject to the homestead continued to be exempt after the sale. In this case, I am asked to decide whether the Trustee can undo a postpetition mortgage. The Debtor has not yet received the proceeds of the Homestead. The issue presented in *Cunningham* is simply not before me. For the foregoing reasons, I conclude that the Property was property of the estate at the time that the Debtor granted the Mortgage.

The third element is whether the Mortgage was authorized. The Debtor's petition does not list the lawsuit or the $901 pre-petition claim of the Firm. The docket in the main case at the time that the Debtor granted the Mortgage does not reflect that the Debtor moved to employ the Firm and seek authority to grant a postpetition mortgage as a retainer.[17] The Firm did not move for authority to be employed once it had notice of the bankruptcy.[18] At the time of the Mortgage, there was no motion to incur post-petition credit as required by 11 U.S.C. § 364. There was no motion to incur credit when the Firm had notice of the bankruptcy.[19] There was no motion for relief from stay.[20] Even Debtor's counsel appears not to have known of the Mortgage until

---

[17] *See, e.g., In re Truoung*, 259 B.R. 264 (Bankr. D. N.J. 2001) (requirements for obtaining a postpetition retainer).

[18] *See, e.g., In re Jarvis*, 53 F.3d 416, 421 (1st Cir. 1995) (concluding counsel may be employed *post facto* upon showing extraordinary circumstances); *In re Albert*, 206 B.R. 636 (Bankr. D. Mass. 1997) (suggesting lack of knowledge of bankruptcy satisfies *Jarvis* standards).

[19] *See, e.g., Bank of Western Mass. v. CPF Premium Funding, Inc. (In re National Reserve Corp.)*, 199 B.R. 241, 244 (Bankr. D. Mass. 1996) (ruling *Jarvis* standards applied to *post facto* postpetition loans).

[20] *See e.g., 40235 Washington St. Corp. v. Lusardi*, 329 F.3d 1076 (9th Cir. 2003) (ruling § 549(c) is unavailable as a defense to a claim for violation of the automatic stay) and *Irwin Mtg.*

several months afterwards. Accordingly, there was no authority to grant the Mortgage.

The fourth factor, that the transfer occurred after the commencement of the case, is not in dispute. Therefore, the Trustee has established the four factors required to prevail under his count against the Firm.

The Firm contends that if I conclude that the Trustee has presented sufficient facts to establish the requirements of an unauthorized postpetition transfer, the Firm can establish that the transfer cannot be avoided as, under subsection (c), it was a good faith purchaser for present fair equivalent value.

The facts reflect that the Debtor granted the Mortgage to secure the fee agreement which the Firm had executed two years earlier with her husband. Nowhere in that fee agreement does it explain that the Firm is representing the Debtor. The only evidence that I have is the affidavits of the partners in which they state they represented the couple and a copy of a motion to withdraw in which the Firm states that it is withdrawing its representation of the plaintiffs in the Litigation which group appear to include the Debtor.

The parties have not detailed the exact nature of the Litigation. I do not know in what capacity the Debtor is a plaintiff and what relief she was seeking. I do not have a fee agreement which the Debtor and the Firm executed. There is no evidence that the Debtor and the Firm had an oral agreement. The account which is attached to the Statement is an account between the Firm and the Debtor's husband. It contains detailed time entries, very few of which mention the Debtor. The account reflects that during the time that the Debtor was a debtor-in-possession, the

---

*Co. v. Tippett (In re Tippett)*, 338 B.R. 82 (B.A.P. 9th Cir. 2005) (agreeing debtor-initiated postpetition transfers not stay violations but subject to § 549).

14

Firm received compensation of over $50,000. I have no information as to who made those payments and which of the plaintiffs benefitted therefrom.

From these documents, I cannot discern whether the Firm actually represented the Debtor and, if so, what legal services it performed on her behalf, when they were performed and how they benefitted her or the estate. Accordingly, I cannot make any rulings with respect to whether the Firm gave present fair equivalent value in exchange for the Mortgage.[21] For this reason, I cannot grant summary judgment with respect to the 11 U.S.C. § 549(c) defense which the Firm has interposed.[22]

IV. Conclusion

Although I have made my findings and conclusions with respect to the Trustee's case under 11 U.S.C. § 549(a), I also conclude that the issue of whether the Firm provided present fair equivalent value to the Debtor in exchange for the mortgage remains controverted. Pursuant to Fed. R. Bankr. P. 7056(d), I will enter an order denying the motions for summary judgment. The sole issue remaining for trial is whether the Firm provided present fair equivalent value to the Debtor.

William C. Hillman
U.S. Bankruptcy Judge

Dated: March 15, 2007

---

[21] I conclude that the Firm had no knowledge of the bankruptcy. The affidavits which the Firm provided make this representations and the Trustee did not dispute the affidavits.

[22] The Trustee is correct that the Firm's request for turnover lacks merit as the Firm has no standing to pursue such relief. I will enter summary judgment for the Trustee on this counterclaim.